# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAN TING LONG, et al., | Case No. 1:19 -cv-00898-DAD-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION FOR PLAINTIFFS' FAILURE TO COMPLETE SERVICE AND FAILURE TO COMPLY WITH PREVIOUS COURT ORDERS |
| v. | |
| ERIC MCAFEE, et al., | |
| Defendants. | (ECF Nos. 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 25) |
| | **OBJECTIONS DUE WITHIN TWENTY-ONE DAYS** |

## I.

## INTRODUCTION

The Court previously found the proofs of service filed by Plaintiffs in this action to be facially contradictory and insufficient to prove service. The Court ordered Plaintiffs to provide supplemental affidavits from the process server to explain how service was completed. Plaintiffs have failed to comply with previous orders of this Court directing Plaintiffs to provide proper affidavits from the process server demonstrating service, and have failed to complete service through an alternative process server. For the reasons explained below, the undersigned recommends dismissal of this action for failure to complete service in violation of Federal Rule of Civil Procedure Rule 4(m), and for failure to comply with the orders of this Court.

1

## II.

## BACKGROUND

### A. Factual Allegations

On July 1, 2019, Wang Ting Long ("Long") and Xuejun Makhsous ("Makhsous") (collectively "Plaintiffs"), proceeding *pro se*, filed this action alleging violations of the Federal Securities and Exchange Act, fraud, breach of contract, and breach of fiduciary duties. (Compl., ECF No. 1.) Plaintiffs claim the Defendants, individually and through the companies they formed and control, took advantage of Plaintiff Long's desire to immigrate to the United States. (Id. at 1.) Long payed $500,000.00 in capital contribution, and $49,000.00 in administrative fees, in connection with securities sold by Defendants relating to programs allowing for foreign investors to apply for permanent residency in the United States through investing in companies. (Id. at 1-5.) Plaintiff Makhsous received assignment of the $49,000.00 administrative fee for translation and research work performed for Long. (Id. at 2.) Plaintiff Long claims to have been taken advantage of in the purchase of the securities because Long did not have independent legal representation, and Defendants materially misrepresented terms of the various agreements. (Id. at 5-10.) Plaintiffs seek damages in excess of $549,000.00, in addition to punitive damages. (Id. at 26.)

### B. Procedural History and the Court's Previous Orders Addressing Service

The Court issued summonses on July 2, 2019. (ECF Nos. 3, 4.) On July 2, 2019, the Court also set an initial scheduling conference for September 10, 2019. (ECF No. 5.) On August 28, 2019, because no service documents nor responsive pleading had been filed, the Court reset the scheduling conference for December 17, 2019. (ECF No. 7.)

On September 24, 2019, because Plaintiffs failed to file proofs of service showing that Defendants had been served in this action, the Court ordered Plaintiffs to file a notice of status of service within fourteen (14) days of entry of the order. (ECF No. 10.) On October 7, 2019, Plaintiffs filed proofs of service alleging service on some, but not all of the then named Defendants. (ECF No. 11.) On October 7, 2019, Plaintiffs also filed a request for entry of default against all but two of the then named Defendants. (ECF No. 12.)

On October 25, 2019, the Court denied Plaintiffs' request for entry of default. (ECF No. 13.) First, the Court noted that as for two named Defendants, U.S. Regional Center Services, LLC, and Park Capital Management, LLC, Plaintiffs had not filed proofs of service for such Defendants, nor sought entry of default against such Defendants. (Id. at 10.) Additionally, while Plaintiffs did seek default against Defendants California Energy Investment Company, LLC, Aemetis, Inc., and AE Advanced Fuels, Inc., Plaintiffs had not filed any proofs of service pertaining to these Defendants. (Id. at 10-11.) The Court advised Plaintiffs that they must file proofs of service for such Defendants or the Court would recommend dismissal of such Defendants. (Id. at 10-11, 26.)

As for the remaining Defendants, Advanced BioEnergy GP, LLC, Advanced BioEnergy, LP, Eric McAfee, Adam McAfee, Joseph Penbera, and Michael Penbera, the Court found the proofs of service submitted were facially inconsistent in that the boxes meant to indicate whether personal service or substitute service was completed were both checked on the forms, and the manner in which they were filled out presented questions of reliability. (Id. at 11-22.) Additionally, even if the Court were to proceed on the assumption that the process server intended only to indicate substitute service, given the totality of the circumstances presented, the Court also questioned whether substitute service could have been effectuated in compliance with Federal Rule of Civil Procedure 4 and California law. (Id.) The Court advised Plaintiffs they were required to file amended proofs of service or supplemental affidavits demonstrating proper service had been completed on these Defendants. (Id.) The Court also advised Plaintiffs they may wish to re-serve Defendants entirely given the Court's explanation of the applicable law governing substitute service. (Id. at 18, 22.) Given the *pro se* status of Plaintiffs, the Court provided additional "Concluding Remarks to the *Pro Se* Plaintiffs" explaining the requirements of service under Federal Rule of Civil Procedure 4, why the Court could not accept the proofs of service as filed, and found that in the interests of justice the Court would provide Plaintiffs additional time to prove service. (ECF No. 13 at 22-25.) The Court specifically stated: "To this end, the Court has extensively set forth above the applicable legal standards governing service of process under the Federal Rules and California law so that Plaintiffs may be informed on these

standards when they address the facial inconsistencies in the proofs of service, and so that the *pro se* Plaintiffs may make an informed decision on whether to proceed by filing amended proofs of service or affidavits explaining how service was proper, or whether to proceed by attempting service in another manner on one or more of the defendants." (ECF No. 13 at 25.)

On November 12, 2019, Plaintiffs filed a motion for default judgment. (ECF No. 14.) On November 15, 2019, the Court denied Plaintiffs' motion for default judgment as premature given that no entry of default had entered pursuant to the Court's October 25, 2019 order denying entry of default. (ECF No. 15.) The Court also reminded Plaintiffs the thirty-day deadline to comply with the Court's October 25, 2019 order was approaching. (Id. at 3.)

On November 21, 2019, Plaintiffs filed three separate documents: (1) a filing entitled "motion to reconsider," which the Court construed as a motion to reconsider the Court's order entered on October 25, 2019, denying Plaintiffs' request for entry of default (ECF No. 16); (2) a document entitled "updated request for entry of default," with an attached proposed order that was entitled "proposed default judgment order" (ECF No. 17); and (3) a supplemental affidavit by Plaintiff Makhsous, describing certain efforts to contact and serve the Defendants in this action (ECF No. 18).

On December 16, 2019, the Court denied Plaintiffs' motion for reconsideration and updated request for entry of default. (ECF No. 20.)[1] In the order, the Court expressed its concern with the modified proofs of service that were submitted by Plaintiffs. Specifically, the Court could not accept the modified proofs of service as presented because: (1) the modified proofs of service did not contain a signature and date from the process server Queenie Orteza ("Orteza"), or the individual who modified the proofs of service attesting to the truth and knowledge of the modifications and information conveyed in the proofs of service; and (2) aspects of the modified proofs of service appeared to demonstrate that the documents were altered using a computer program, a copier, or otherwise, by utilizing signatures and aspects from the other proofs of service to make it appear as if the process server had made the

---

[1] In the December 16, 2019 order, the Court terminated Defendants U.S. Regional Center Services, LLC, and Park Capital Management, LLC, pursuant to the Plaintiffs' request to voluntarily dismiss such Defendants. (ECF No. 20 at 11.)

modifications. (Id. at 16-17.) Based on these facts and other reasons explained in the order, the Court denied Plaintiffs' motion for reconsideration and updated request for entry of default. (Id. at 14-20.) The Court ordered Plaintiffs to provide, within thirty (30) days of service of the order, an affidavit from the process server explaining how the modifications were made to the proofs of service and explaining how service was effectuated. (Id. at 20.) The Court warned Plaintiffs that the failure to comply with the order would result in the recommendation of dismissal of this action because Plaintiffs had failed to demonstrate that any Defendant had been properly served in accordance with Rule 4 and California law. (Id.) The Plaintiffs were also advised that upon receipt of the affidavit from the process server, the Court would then consider holding a live evidentiary hearing whereby the process server would be required to appear in person to testify as to the modifications made to the originally submitted proofs of service. (Id. at 19.)

On January 17, 2020, Plaintiffs filed a motion for an extension and reconsideration. (ECF No. 21.) On January 24, 2020, the Court granted Plaintiffs an extension of time to comply with the Court's previous order, and denied the motion for reconsideration. (ECF No. 22.) Plaintiffs' filing indicated that when Plaintiffs had requested the process server Orteza to update the proofs of service, Orteza instructed Plaintiff Makhsous to make the corrections on the proofs of service as Orteza was out of town and had no access to a computer. (ECF No. 21 at 4, Ex. 2.) The Court found this to be an implicit confirmation of the Court's concern that the modified proofs of service were not in fact modified by Orteza but had been altered to look as if the process server had modified them, and the Court notified Plaintiffs that this was unacceptable. (ECF No. 22 at 3-4.) Nonetheless, given the fact the modifications were apparently made at the direction and with the consent of the process server, the Court declined to find Plaintiffs were intending to perpetuate a fraud on the Court. (Id. at 4.) The Court noted that it was "concerned that it appears Orteza is reluctant or unhurried to provide her clients, Plaintiffs in this action, with sufficient proofs of service attesting to the fact that she completed service." (Id. at 5.) Given this concern with the process server's communications with Plaintiffs, the Court sought to avoid locking Plaintiffs into an untenable situation where Plaintiffs could *only* continue in this litigation if they obtained an affidavit from Orteza. To this end, the Court provided Plaintiff an

additional thirty days to provide either: (1) an affidavit from Orteza attesting to how the modifications to the proofs of service, whether she authorized Plaintiffs to modify them, and how service was effectuated, in addition to an affidavit from either Plaintiff attesting to who modified the proofs of service and whether they were authorized to do so; or alternatively (2) an affidavit from a Plaintiff attesting to how the proofs of service were modified and describing the diligence made to obtain an affidavit from Orteza, in addition to obtaining the services of an alternate process server to serve Defendants and filing such proofs of service. (ECF No. 22 at 6.) The Court also clearly advised Plaintiffs that the failure to comply with the order would result in the recommendation of dismissal of this action because Plaintiffs had failed to demonstrate that any defendant had been properly served with the complaint and summonses in accordance with the requirements of Federal Rule of Civil Procedure 4 and the California Code of Civil Procedure. (ECF No. 22 at 7.)

In response to the Court's order, on February 24, 2020, Plaintiff Makhsous filed an affidavit and exhibits that are currently before the Court for consideration. (ECF No. 25.)

### III.

### LEGAL STANDARD

The legal standards and case law regarding service under Federal Rule of Civil Procedure 4 and the California Code of Civil Procedure were previously set out in the Court's orders in an extensive and informational manner for the *pro se* Plaintiffs, and such information is incorporated herein by way of reference. (ECF Nos. 13, 20.)

Rule 4(m) of the Federal Rules of Civil Procedure addresses the time requirements for service of the complaint in civil cases, and provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Unless service is waived, proof of service must be made to the Court, and unless the U.S. Marshal serves, proving service must be accomplished by an affidavit of the server. Fed. R. Civ. P. 4(l)(1).

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under" Federal Rule of Civil Procedure 4. Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citing Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982)). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986)). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted). "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Local Rule 110 provides that the "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." L.R. 110. The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000); Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010).

**IV.**

**DISCUSSION**

### A. Plaintiff Makhsous' Affidavit and Exhibits

In response to the Court's most recent order, Plaintiff Makhsous filed an affidavit describing actions the Plaintiffs took to complete service, some of which have previously been presented and considered by the Court, in addition to additional arguments, facts, and exhibits. (Pl. Xuejun Makhsous Aff. ("Makhsous Aff."), ECF No. 25.) The Court shall now summarize the pertinent portions of the most recent submission.

On July 8, 2019, Makhsous sent an email to Defendants Eric McAfee, Joseph Penbera, and Michael Penbera requesting a waiver of service, but none of these Defendants replied to the request. (Makhsous Aff. ¶ 2, Ex. 1, ECF No. 25 at 5.)[2] On July 23, 2019, Makhsous hired a private server, Eddings Attorney Service, to "deliver summons and the summons returned unserved." (Makhsous Aff. ¶ 3.)[3] Plaintiff declares that on July 29, 2019, Defendant Joseph Penbera sent an email to Plaintiffs and other Defendants, stating that all mail should be sent to c/o Aemetis, at the Cupertino Address, and that Defendant Michael Penbera and California Energy Investment Center, LLC, "also list their address" as 20400 Stevens Creek Blvd., Suite 700, Cupertino, CA 95014 (the "Cupertino Address"). (Makhsous Aff. ¶ 4, Ex. 2.)[4]

On July 31, 2019, process server Orteza of Bay Area Servers, hired by Makhsous, went to the office of Aemetis at the Cupertino Address and "delivered [the] summons and complaints to an individual sitting in the reception area," however, "[s]he didn't get the name of the individual since he was on the phone at the time," and Orteza took a photo of the office at Aemetis. (Makhsous Aff. ¶ 5; Ex. 3.)[5]

On August 21, 2019, Plaintiff Makhsous mailed copies of the summons and complaint to Defendant Eric McAfee at the Cupertino Address. (Makhsous Aff. ¶ 6; Ex. 4.) Makhsous contends that on or about August 23, 2019, "after Defendant Eric McAfee received copies of [the] summons and complaint from Plaintiff Makhsous, he called Plaintiff Makhsous and Wanting Long for a meet and confer on September 10 in compliance to orders issued by this Court," and that "[i]n September 2019, Defendant Eric McAfee pretended to offer a settlement

---

[2]  The Court previously reviewed this email before finding the totality of the facts presented did not demonstrate sufficient proof of service on Defendants, particularly in light of the doctoring of the modified proofs of service. (ECF Nos. 16 at 10; 20 at 12, 14-20.)

[3]  Plaintiffs previously attached documentation of the service attempts completed by Eddings Attorney Service that was reviewed by the Court before finding the totality of the facts presented did not demonstrate sufficient proof of service on Defendants. (ECF Nos. 16 at 11; 20 at 12, 14-20.)

[4]  The Court previously reviewed and considered this email prior to finding the totality of the facts presented did not demonstrate sufficient proof of service on Defendants. (ECF Nos. 16 at 12; 20 at 12, 14-20.)

[5]  The Court previously reviewed and considered this fact and the photograph of the office prior to finding the totality of the facts presented did not demonstrate sufficient proof of service on Defendants. (ECF Nos. 16 at 7-8, 14; 20 at 14-20.)

agreement in exchange of Plaintiffs withdrawing this instant legal action against all Defendants without definite assurance of returning investment to Plaintiffs." (Makhsous Aff. ¶ 7.)[6]

On or about September 10, 2019, Orteza hand delivered the proofs of service to Plaintiff Wanting Long. (Makhsous Aff. ¶ 8.)

On November 16, 2019, Makhsous states that Orteza "finally responded to the repeated requests made by Plaintiff Makhsous and instructed her to make corrections to [the proofs of service] because Queenie Orteza didn't have access to [a] computer to make correction[s] at that time," and "[u]nder the authorization given by Queenie Orteza, on or about November 17, 2019, Plaintiff Makhsous made corrections to the [proofs of service] provided by Queenie Orteza based on her description of service [of] process in that she didn't personally serve Defendant Eric McAfee but left summons and complaints with a man sitting by the reception desk." (Makhsous Aff. ¶¶ 10-11, Ex. 5.)[7]

On January 7, 2020, Plaintiff Makhsous sent Orteza a request for an affidavit and copies of the modified proofs of service. (Makhsous Aff. ¶ 12, Ex. 6, ECF No. 25 at 12.) Specifically, the email is very short and states in relevant part: "Please review the attached affidavit and sign and notarize it. I need it to send to court to seek default judgement [sic]. Thank you for your help." (Ex. 6.) Plaintiff cites no other communications until February 2, 2020, when Plaintiff emailed Orteza stating: "The Court has ordered us to hire [a] new Processor to serve summons to Defendants as your proofs of service are defective and can't be used at Court. You have repeatedly refused to file affidavits to validate your proofs of service. Please refund our fees so we can find a new processor to serve summons to defendants. See court order attached." (Ex. 7, ECF No. 25 at 13.)

///

///

---

[6] The Court previously reviewed and considered the August 21, 2019 mailing, and the communications regarding settlement that occurred between Plaintiff Makhsous and Eric McAfee in September of 2019. (ECF Nos. 16 at 5-7, 26-27; 20 at 13-20; 21 at 2-4.)

[7] The Court previously reviewed and considered Plaintiff's proffered explanation for submitting the modified proofs of service in such a manner as to indicate they had been modified by the process server directly. (ECF Nos. 21 at 4-5, 7-8; 22.)

Orteza "refused to provide the affidavit and sent Plaintiff Makhsous a cease and desist letter" on February 11, 2020. (Makhsous Aff. ¶ 13, Ex. 7.) Specifically, Orteza wrote:

> We already fulfilled our original agreement to process serve and provided you with evidence. We only contracted to deliver the documents. You never provided the exhibits what was modified. You and I do not have a new contract to produce an affidavit. And we decline any offers to contract with you.
>
> This is a cease and desist notice.
>
> Fee schedule: You agree to pay $100,000 per each attempt to contact me, any use of my business names or trademarks, defamation, slander. In addition, you agree to pay $10,000 per hour of my time to deal with any of your communications or communications done on your behalf.
>
> This is a legal notice to principal is notice to agent, notice to agent to principal.
>
> If you do not want to pay my fees listed, cease and desist from all contacts with me and my business.

(Ex. 7.)

Makhsous contends Plaintiffs did not hire a new process server because: "Given the expenses of hiring previous two private servers and travel from Chicago and China for a hearing scheduled by this Court on September 10[,] 2019, Plaintiffs are not able to afford new private servers without any assurance of successful service of summons." (Makhsous Aff. ¶ 14.) Additionally, Makhsous states that: "Per Rule 7004(b)(1) and (3), Plaintiff Makhsous mailed copies of summons and complaints to Defendants who conduct business or profession at [the Cupertino Address] on February 19, 2020." (Makhsous Aff. ¶ 15, Ex. 8.)

### B. The Most Recently Filed Proof of Service is Invalid and Plaintiff's Affidavit Fails to Comply with the Court's Prior Orders

In the Court's most recent order issued January 24, 2020, the Court granted Plaintiffs an extension of time to comply with the Court's prior order, and ordered Plaintiffs to provide, within thirty days of service of the order, either (1) affidavits from Orteza, and a Plaintiff, describing the completion of service and explaining the modification of the previous proofs of service; or (2) an affidavit from a Plaintiff describing efforts to obtain an affidavit from Orteza, and proofs of service from an alternative process server demonstrating service has been completed on the Defendants in this action. (ECF No. 22.)

By providing the ability to utilize a different process server, the Court wanted to ensure Plaintiffs were not locked into an untenable position where they could *only* rely on process server Orteza to complete service in this action. The Court also clearly advised Plaintiffs that the failure to comply with the order would result in the recommendation of dismissal of this action because Plaintiffs had failed to demonstrate that any Defendant had been properly served with the complaint and summonses in accordance with the requirements of Federal Rule of Civil Procedure 4 and the California Code of Civil Procedure. (ECF No. 22 at 7.)

The Court notes that Plaintiffs have submitted no evidence of communications with Orteza following the Court's order issued on January 24, 2020, aside from the February 2, 2020 email through which Plaintiffs requested a refund from Orteza in order to pay for a new process server but did not make any further request for an affidavit. (Ex. 7, ECF No. 25 at 13.) Nonetheless, the Court finds Plaintiffs have adequately demonstrated through the attached "cease and desist" letter from Orteza, that Plaintiffs will be unable to obtain a sufficient affidavit from process server Orteza. (Id.) The Court recognizes the extremely unprofessional nature exhibited by Orteza in her most recent communication. (Id.) The Court also finds that the most recent communication from Orteza and the unprofessional nature exhibited further reinforces the appropriateness of the Court's previous decisions rejecting the proofs of service previously filed.

However, instead of obtaining the services of a reputable process server to complete service on the Defendants as the Court afforded the Plaintiffs the opportunity to do, Plaintiffs rather contend that given the expenses incurred in hiring two process servers and in travelling from Chicago and China for a hearing scheduled by this Court on September 10, 2019, Plaintiffs are "not able to afford new private servers without any assurance of successful service of summons." (Makhsous Aff. ¶ 14.) While the Court is sympathetic to any lost costs associated with the hiring of process server Orteza, the Court does not find this to be a valid reason nor good cause for non-compliance with the Court's previous orders and the requirements of service under the Federal Rules of Civil Procedure. Further, Plaintiff's most recently filed proof of service fails to satisfy the requirements for service because service must be completed by a non-party and while Plaintiffs cite to the Federal Rules of Bankruptcy Procedure, such rules are

inapplicable to this action.

The Court first turns to the most recent proof of service filed.

1.    Plaintiffs' Most Recently Filed Proof of Service

Attached to Plaintiff Makhsous' most recent affidavit is a proof of service form. (ECF No. 25 at 4.) The proof of service purports to demonstrate that service was completed by first class mail on February 19, 2020, by Plaintiff Xuejun Makhsous as server, and provides that "Per Rule 7004 copies of summons and complain[t] [were] mailed by first class mail postage prepaid to the place where the individual regularly conducts a business or profession, to an officer/agent of a domestic LLC, partnership." (Id.) Plaintiff also attaches a printout of Rule 7004 of the Federal Rules of Bankruptcy Procedure. (ECF No. 25 at 11.)

First, service must be completed by a non-party and thus any service attempted to be completed by a party in this action is invalid. See Fed. R. Civ. P. 4(c)(2) (stating service must be completed "[a]ny person who is at least 18 years old and not a party."). Therefore, even if the manner of service complied with other applicable rules for service, which it does not, service is facially invalid because it was completed by Plaintiff Makhsous, a party in this action. Further, even if a party could serve process, the proof of service does not specify which Defendant or Defendants were purportedly served through this manner. (Id.)

Additionally, while Plaintiff cites to Rule 7004 in the proof of service and affidavit, Rule 7004 is a Federal Rule of Bankruptcy Procedure which governs service in bankruptcy proceedings, whereas the Federal Rules of Civil Procedure apply to general civil litigation actions, such as this case. See Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."); Fed. R. Civ. P. 4(c) (providing rules for service in civil actions); Fed. R. Civ. P. 81(a)(2) ("These rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure."); Fed. R. Bankr. P. 1001 ("The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code."); Fed. R. Bankr. P. 1001 (describing the scope and application of the bankruptcy rules to adversarial bankruptcy proceedings); Fed. R. Bankr. P. 7004 (describing rules of service in bankruptcy proceedings).

For all of these reasons, Plaintiffs' most recent proof of service and affidavit fails to prove service on any Defendants in this action, and fails to comply with the previous orders of the Court.

### 2. Plaintiffs' Travel Costs

As for the claimed travel costs, the Court first notes that Plaintiffs have provided no evidence or documentation demonstrating the amount expended for travel, if any. Plaintiffs have also not indicated whether or when they received the August 28, 2019 order continuing the scheduling conference. (ECF No. 7.) The Court recognizes that given Plaintiffs reside in China and in Illinois, there may have been some delay in receiving the notice through postal mail. Plaintiffs do not provide any information on whether they received such notice prior to or after traveling, or whether they attempted to cancel or modify their travel arrangements after receiving such notice. Even if Plaintiffs had done so, such costs would not relieve Plaintiffs of their duty to serve the Defendants in this action. While Plaintiffs are proceeding *pro se*, they are not proceeding *in forma pauperis*, which *would* entitle the Plaintiffs to a mechanism for service without cost to the Plaintiffs. See 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases."); Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915."); Uribe v. McKesson, No. CIVIL 08-1285 DMSNLS, 2009 WL 63003, at *1 (E.D. Cal. Jan. 9, 2009).

Further, Plaintiffs never sought relief from travel expenses prior to incurring them by requesting a telephonic appearance. Again, the Court recognizes that given the date of mailing, the Plaintiffs had less than two weeks' notice of the change to the scheduling conference date. However, in addition to no record of expenses actually incurred for travel, there is also no record or indication that Plaintiffs contacted the Court to inquire about making a telephonic appearance at the scheduling conference prior to making travel arrangements.[8]

---

[8] The Court notes that Plaintiffs did not hesitate to file a motion for an exception to Local Rule 133 in seeking permission to e-file on July 1, 2019, the day the complaint was filed in this action, and again on September 12, 2019. (ECF Nos. 2, 8.)

The information contained in the order setting the scheduling conference further confirms that Plaintiffs were provided with adequate notice of the requirements of service prior to holding the scheduling conference, and of the possibility for telephonic appearances.  On July 2, 2019, the Court set an initial scheduling conference to occur on September 10, 2019.  (ECF No. 5.)  The July 2, 2019 order setting the mandatory scheduling conference provided the following guidance and requirements for filing service documents prior to proceeding with the scheduling conference and the litigation generally:

> The Court is unable to conduct a Scheduling Conference until the defendant has been served with the summons and complaint.  Accordingly, the plaintiff shall diligently pursue service of the summons and complaint and dismiss those defendants against whom plaintiff will not pursue claims.  The plaintiff shall promptly file proofs of service of the summons and complaint so the Court has a record of service.  Counsel are referred to Fed. R. Civ. P. 4, regarding the requirement of timely service of the complaint.  Failure to timely serve the summons and complaint may result in the imposition of sanctions, including dismissal of unserved defendants.

(ECF No. 5 at 1.)  Thus, Plaintiffs were notified by the Court's very first filing in this action that it was their duty to promptly file proofs of service of the summons and complaint and were referred to Federal Rule of Civil Procedure 4.  On August 28, 2019, due to no certificates of service nor responsive pleadings filed in the action, the Court reset the scheduling conference for December 17, 2019.  (ECF No. 7.)

As for the fact that Plaintiffs did not request a telephonic appearance, the Court recognizes that the July 2, 2019 order provided that "[a]ttendance at the Scheduling Conference is **mandatory** for all parties," specified that "[p]arties may appear by their counsel, if represented," and that "[i]f a party is not represented by counsel, they must appear personally at the Scheduling Conference."  (ECF No. 5 at 2.)  The scheduling order further provides that: "**Counsel may request that their attendance be by telephonic conference**," and "[i]f one or more parties wish to appear telephonically, counsel shall contact . . . [the] Courtroom Deputy Clerk . . . sufficiently in advance of the conference so that a notation can be placed on the court calendar."  (ECF No. 5 at 3 (emphasis in original).)  Thus, while the order specifies *pro se* parties must appear personally, the scheduling order provides a mechanism for telephonic appearances, and if Plaintiffs were to incur substantial travel costs, the Court would have considered allowing

1    Plaintiffs to appear telephonically.[9]

2    Finally, Plaintiffs are claiming damages in this action in excess of half of a million

3    dollars ($549,000.00). (ECF No. 1 at 25-26.) It is perplexing to the Court why the relatively

4    small cost of completing service would result in Plaintiffs refusing to hire another process

5    server to complete service in this action, particularly given the number of individual and entity

6    defendants named in this action.

7    For all of the above reasons, the Court finds Plaintiffs' proffered reason of an inability to

8    pay for another process server to complete service in this action without assurances of successful

9    service, does not establish good cause, nor excusable neglect for the failure to complete service

10   in this action nor for the failure to comply with the Court's previous orders.

11   **C.    The Court Recommends Dismissal for Failure to Serve Under Rule 4**

12   Untimely service of process is governed by Federal Rule of Civil Procedure 4(m), which

13   requires a district court to dismiss a plaintiff's causes of action against any defendant that is not

14   timely served with process, unless plaintiff shows good cause:

15       **(m) Time Limit for Service.** If a defendant is not served within 90 days after the
         complaint is filed, the court--on motion or on its own after notice to the plaintiff--
16       must dismiss the action without prejudice against that defendant or order that
         service be made within a specified time. But if the plaintiff shows good cause for
17       the failure, the court must extend the time for service for an appropriate period.

18   Fed. R. Civ. P. 4(m).

19   "Rule 4(m) requires a two-step analysis in deciding whether or not to extend the

20   prescribed time period for the service of a complaint." In re Sheehan, 253 F.3d 507, 512 (9th

21   Cir. 2001); see also Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009); Hopson v.

22   Nove Plaza, LLC, No. 117CV01746AWISAB, 2019 WL 1078351, at *3 (E.D. Cal. Mar. 7,

23   2019). "First, upon a showing of good cause for the defective service, the court must extend the

24   time period." In re Sheehan, 253 F.3d at 512. "Second, if there is no good cause, the court has

25   the discretion to dismiss without prejudice or to extend the time period." Id.

26

27   ---
     [9] The Court notes the scheduling order uses the terms "counsel" and "parties" in the section pertaining to telephonic
     appearances. (ECF No. 5 at 3.) The Court notes that the Local Rules specify that the term "Counsel" "refers to an
     attorney and/or a party acting in propia persona or pro se." L.R. 101; see also L.R. 183(a) ("All obligations placed
28   on 'counsel' by these Rules apply to individuals appearing in propia persona.").

The Ninth Circuit has stated that "[g]ood cause to avoid dismissal may be demonstrated by establishing, at minimum, excusable neglect," and that "[i]n addition to excusable neglect, a plaintiff may be required to show the following factors to bring the excuse to the level of good cause: '(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.' " Lemoge, 587 F.3d at 1198 n.3 (quoting Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir.1991)).

The Court repeatedly provided Plaintiffs with the applicable law and standards concerning service of process and afforded Plaintiffs multiple opportunities to explain and rectify the situation. Although explained in greater detail above, the Court shall summarize the relevant timeline once again. Plaintiffs filed this action on July 1, 2019, and on July 2, 2019, the Court issued an order setting the scheduling conference that explained the requirements of completing service and filing proof of such with the Court. (ECF Nos. 1, 5.) Ninety (90) days after the filing date was September 29, 2019. See Fed. R. Civ. P. 4(m) (defendant must be served within ninety days of filing of a complaint). In anticipation of the expiration of the ninety-day period, on September 24, 2019, the Court ordered Plaintiffs to file a notice of status of service within fourteen (14) days of service of the order. (ECF No. 10.) On October 7, 2019, Plaintiffs filed certificates of service and a request for entry of default. (ECF Nos. 11, 12.) Therefore, the proofs of service were first filed in this action beyond the ninety (90) day deadline.

After finding the proofs of service facially invalid and insufficient to prove service, on October 25, 2019, given Plaintiffs' *pro se* status and the interests of justice, the Court granted Plaintiffs an additional thirty (30) days to prove service. (ECF No. 13 at 22-25.) On November 21, 2019, Plaintiffs filed a motion to reconsider and a supplemental affidavit. (ECF Nos. 16, 17, 18.) On December 16, 2019, the Court rejected the modified proofs of service as facially invalid and granted Plaintiffs an additional thirty (30) days to provide sufficient affidavits explaining the modifications and effectuation of service. (ECF No. 20.) On January 17, 2020, Plaintiffs filed a motion for an extension and reconsideration. (ECF No. 21.) On January 24, 2020, the Court granted Plaintiffs an additional thirty (30) days to prove service, including another opportunity to

utilize the services of an alternative process server. (ECF No. 22.) On February 24, 2020, Plaintiffs then filed an affidavit and exhibits which the Court has considered herein. (ECF No. 25.)

Given the Court's previous orders granting Plaintiffs additional time to complete service, Plaintiffs' proffered reason for now failing to hire a new process server, the monetary cost, does not even present excusable neglect for the failure to serve under Rule 4, let alone good cause. See Hopson, 2019 WL 1078351, at *2–3 (Here, Hobson has failed to even attempt to show good cause or excusable neglect for her failure to serve Nove Plaza by now. Hobson did not provide the Court with a meaningful response to the Court's order to show cause from February 1, 2019, despite being ordered to do so and despite being given additional time to do so . . . In the past, the Court exercised its discretion to grant Hobson multiple extensions to the service period. But now, the Court will neither grant another extension nor reward Hobson for her failure to comply with the Court' s recent order to show cause.") (emphasis in original). Further, other factors that would present good cause are not present, as based on the totality of the facts and documents presented through the various filings, the Court cannot say which Defendants or whether any Defendant received actual notice of the lawsuit, nor that any Defendant would suffer no prejudice if a further extension was granted. Lemoge, 587 F.3d at 1198 n.3.

Accordingly, the Court would recommend exercising its discretion to decline extending the time period for service yet again, and recommends dismissing this action without prejudice.

**D.      The Court Recommends Dismissal for Failure to Comply with Court Orders**

For all of the same reasons discussed above, the Court finds Plaintiffs have repeatedly failed to comply with the orders of this Court, and recommends dismissal of the action for such failure.

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to

comply with local rule requiring pro se plaintiffs to keep court apprised of address); <u>Malone v. United States Postal Serv.</u>, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); <u>Henderson v. Duncan</u>, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

In determining whether to dismiss an action for failure to comply with a pretrial order, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." <u>In re Phenylpropanolamine (PPA) Products Liability Litigation</u>, 460 F.3d 1217, 1226 (9th Cir. 2006); <u>Thompson v. Hous. Auth. of City of Los Angeles</u>, 782 F.2d 829, 831 (9th Cir. 1986). These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action. <u>In re Phenylpropanolamine (PPA) Products Liability Litigation</u>, 460 F.3d at 1226.

In this instance the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal. <u>Id.</u> Plaintiffs were repeatedly provided with the legal standards for service and were repeatedly granted extensions to comply with such requirements and to comply with the Court's orders. Plaintiffs' failure to comply with the orders of the Court hinders the Court's ability to move this action towards disposition, and indicates that Plaintiffs do not intend to diligently litigate this action.

Since it appears that Plaintiffs do not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the Defendants in this action. <u>In re Eisen</u>, 31 F.3d 1447, 1452-53 (9th Cir. 1994). This risk of prejudice may be rebutted if Plaintiffs offer an excuse for the delay. <u>In re Eisen</u>, 31 F.3d at 1453. The delay in this action is solely attributable to Plaintiffs' failure to comply with the Court's previous orders and attempts to take shortcuts in completing service. The record demonstrates that Plaintiffs do not intend to diligently complete service and the risk of prejudice to the Defendants weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is outweighed by the factors in favor of dismissal. It is Plaintiffs' responsibility to move this action forward. This action can

proceed no further without Plaintiffs complying with the orders of this Court and completing service on the Defendants. This action cannot simply remain idle on the Court's docket, unprosecuted. In this instance, this factor does not outweigh Plaintiffs' failure to comply with the Court's orders.

Finally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. <u>Ferdik</u>, 963 F.2d at 1262; <u>Malone</u>, 833 F.2d at 132-33; <u>Henderson</u>, 779 F.2d at 1424. On October 25, 2019, December 16, 2019, and in the Court's last order issued on January 24, 2020, the Court clearly advised Plaintiffs that the failure to comply with the orders would result in the recommendation of dismissal because Plaintiffs had failed to demonstrate that any defendant had been properly served with the complaint and summonses in accordance with the requirements of Federal Rule of Civil Procedure 4 and the California Code of Civil Procedure. (ECF Nos. 13 at 27; 20 at 20; 22 at 7.) Thus, Plaintiffs had adequate warning that dismissal would result from noncompliance with the Court's orders.

For all of these reasons, the Court recommends dismissal of the action for failure to obey Court orders.

///

///

///

///

///

///

///

///

///

///

///

///

## V.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, IT IS HEREBY RECOMMENDED that this action be DISMISSED WITHOUT PREJUDICE for Plaintiffs' failure to comply with the Court's orders, and failure to serve Defendants in compliance with Federal Rule of Civil Procedure 4(m).

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **twenty-one (21) days** of service of this recommendation, Plaintiffs may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiffs are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 19, 2020**

UNITED STATES MAGISTRATE JUDGE